UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-62546-SMITH/VALLE

LYDIA MOULTRY,

    Plaintiff,

v.

ANDREW M. SAUL,
Acting Commissioner of Social
Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court on Plaintiff Lydia Moultry's Motion for Summary Judgment and Defendant Nancy A. Berryhill's, Acting Commissioner of the Social Security Administration, Motion for Summary Judgment and Response (ECF Nos. 18, 19, 20) (the "Motions"). United States District Judge Rodney Smith has referred the case to the undersigned for all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters. *See* (ECF No. 2); *see also* 28 U.S.C. § 636(c).

After due consideration of the record, the Motions, Plaintiff's Reply (ECF No. 21), and being otherwise fully advised on the matter, the undersigned recommends that Plaintiff's Motion be **GRANTED**, Defendant's Motion be **DENIED**, and the Administrative Law Judge's ("ALJ's") decision be **REMANDED** for the reasons set forth below.

### I.    PROCEDURAL HISTORY

This suit involves an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (the "Act"). On February 28, 2012, Plaintiff was

found disabled beginning on May 20, 2011 based on meeting a listing for breast cancer.[1] (R. 53, 140).[2] On May 5, 2016, Plaintiff was advised that her disability benefits would end because her health had improved. (R. 151-55). On May 17, 2016, Plaintiff requested reconsideration of the Commissioner's decision to cease disability benefits. (R. 159). On February 1, 2017, a disability hearing officer found that Plaintiff was found no longer disabled by due to medical improvement, effective as of May 5, 2016. (R. 169-76). Plaintiff subsequently requested a hearing, which was held before ALJ Sylvia H. Alonso on July 9, 2018. (R. 102-30). Plaintiff, appearing with counsel, and a Vocational Expert both testified at the hearing. (R. 107-30).

On October 17, 2018, the ALJ issued a decision (the "Decision") denying Plaintiff's appeal and finding that Plaintiff's disability ended on May 5, 2016. (R. 50-61). Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication. (ECF Nos. 18, 19, 20).

## II. STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42

---

[1] Plaintiff met Listing 13.10A for breast cancer, with chemotherapy, and subsequent breast mastectomy with reconstruction. (R. 140).

[2] All references are to the record of the administrative proceeding filed as part of the Defendant's Answer. *See* (ECF Nos. 12, 13).

U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154; *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053 (citation omitted); *Brightmon,* 743 F. App'x at 351 (citation omitted).

An ALJ typically follows a five-step sequential inquiry when deciding whether an individual is disabled.[3] However, when an ALJ is determining whether a disability has ended (i.e., cessation), as in this case, the ALJ employs an eight-step sequential evaluation. 20 C.F.R.

---

[3] The five-step sequential evaluation for an initial disability determination considers the following:
    (1)    Is the person presently unemployed?
    (2)    Is the person's impairment severe?
    (3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
    (4)    Is the person unable to perform his or her former occupation?
    (5)    Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4).

§ 404.1594(f).  The first determination is whether the claimant is engaged in substantial gainful activity.  If so, a finding of a disability status will end. 20 C.F.R. § 404.1594(f)(1).  If not, the ALJ proceeds to step two.

At Step 2, the ALJ must determine whether the claimant suffers from an impairment or combination of impairments which meets or equals the severity of a Listing.  If so, the disability will be found to continue. 20 C.F.R. § 404.1594(f)(2).  If not, the ALJ proceeds to step three.

At Step 3, the ALJ must determine whether there has been medical improvement in the claimant's condition.  20 C.F.R. § 404.1594(f)(3).  Medical improvement is any decrease in the medical severity of any impairment which was present at the time of the most recent favorable decision finding the claimant disabled.  20 C.F.R. § 404.1594(b)(1).  If there has been medical improvement, the ALJ proceeds to step four.  If there is no medical improvement, the ALJ proceeds to step five.

At Step 4, the ALJ must determine whether the improvement relates to the claimant's ability to do work.  20 C.F.R. § 404.1594(f)(4).  If the medical improvement does not relate to the ability to work, the ALJ proceeds to step five.  If, however, the medical improvement does relate to the ability to work, the ALJ proceeds to Step 6.  *Id.*

At Step 5, the ALJ must determine if an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5).  The Regulation provides two groups of exceptions.  If an exception from the first group applies, the analysis proceeds to the next step.  If an exception from the second group applies, the claimant's disability ends.  *Id*.  If none apply, then the claimant's disability continues.  *Id.*

At Step 6, the ALJ must determine whether the claimant's current impairments in combination are severe.  20 C.F.R. § 404.1594(f)(6).  If the claimant's impairments do not

significantly limit the claimant's ability to perform basic work activities, then the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(6); *see also Rockhill v. Saul*, No. 19-14001-CIV, 2020 WL 1445621, at *8 (S.D. Fla. Feb. 7, 2020). If, however, the claimant's impairments are severe, the ALJ proceeds to step seven.

At Step 7, the ALJ must assess the claimant's residual functional capacity ("RFC") based on the claimant's current impairments and considers whether claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If claimant can perform past relevant work, then claimant's disability ends. *Id.* If, however, claimant is unable to perform past relevant work, the ALJ proceeds to step eight. *Id*.

Lastly, at Step 8, if claimant is unable to perform past relevant work, the ALJ must determine whether other work exists in the national economy that the claimant can perform, given the claimant's age, education, and RFC. 20 C.F.R. § 404.1594(f)(8). If the claimant can perform other work and that work exists in significant numbers in the national economy, then the claimant is no longer disabled. If, however, the claimant cannot perform other work, then the claimant's disability continues. *Id.*; *see also Rockhill*, 2020 WL 1445621, at *8.

In cases involving cessation of benefits, the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the Plaintiff has experienced "medical improvement." *Olivo v. Colvin*, No. 6:16-cv-259-Orl-40JRK, 2017 WL 708743, at *2 (M.D. Fla. Jan. 30, 2017); *Soto v. Comm'r of Soc. Sec. Admin.*, No. 5:19-CV-568-OC-MAP, 2020 WL 4048210, at *2 (M.D. Fla. July 20, 2020).

### III.  THE RECORD

#### A. Plaintiff's Testimony and Relevant Background[4]

Plaintiff was a 54 year old high school graduate at the time of the administrative hearing.[5] (R. 112, 244, 255).  From 1987 to 2011, Plaintiff worked as a Court Clerk/Trial Court Specialist at the Broward County courthouse. (R. 60, 111, 114, 340).  In 2011, Plaintiff underwent treatment for breast cancer, including chemotherapy, and subsequent breast mastectomy with reconstruction. (R. 140).  In 2012, Plaintiff was found disabled effective May 20, 2011.  (R. 140, 145, 1042).

At the July 2018 administrative hearing, Plaintiff testified that her job as a Court Clerk/ Trial Specialist involved many functions, including pulling files, preparing dockets and orders, and providing general support to the Judge. (R. 110); *see also* (R. 341) (Work History Report). During her time as a Court Clerk, Plaintiff at times lifted boxes of files weighing approximately 30 to 40 pounds.  (R. 110, 116); *see also* (R. 341) (indicating that Plaintiff lifted boxes of files up to 50 pounds).  She left the job as a Court Clerk when she went on disability due to her cancer treatment and would have to reapply if she wanted to return to that job.  (R. 111-12).

Plaintiff lives with her husband and has two adult children who visit at least twice a week. (R. 108, 112).  She occasionally drives no more than a mile to, for example, CVS or Winn Dixie. (R.  112, 117). Within months of the administrative hearing, Plaintiff had traveled on a seven-day Caribbean cruise with family and on a bus trip to New Orleans.  (R. 113-14).  Plaintiff also had

---

[4] The medical record in this case is voluminous.  Very little of this record, however, pertains to the dispositive issue raised by the parties on appeal.  Thus, although the undersigned has reviewed the record, there is no need to repeat Plaintiff's medical history except as relevant to the parties' arguments.

[5] Plaintiff's date of birth is July 25, 1964, making her 54 at the time of the July 9, 2018 administrative hearing.  (R. 102, 244, 255).

plans to attend a family reunion in Kentucky shortly after the administrative hearing, which was a car trip planned by her daughter. (R. 113).

Plaintiff also testified that she has tingling, numbness, and problems gripping in both hands. (R. 117). As a result of her cancer treatment, Plaintiff also has lymphedema in both arms and sometimes wears a sleeve to control the swelling. (R. 121). Plaintiff also suffers from tingling and numbness in her feet and swelling in her legs. (R. 117-18). According to Plaintiff, to control the swelling in her legs, she elevates her legs 60% of the time. (R. 118). Plaintiff also has pain in her neck. (R. 121). Plaintiff cannot do simple things like laundry because of the pain in her hands. (R. 119-20). Plaintiff also testified that she suffers from fatigue and low energy, and has to nap two to three times a day. (R. 120). Plaintiff testified that she has problems with memory and concentration. (R. 120-21). Plaintiff also suffers from diabetes, takes insulin twice a day, and has frequent urination. (R. 122).

In terms of mental impairments, Plaintiff testified that she suffers from depression, and has heard voices and visions for approximately three years. (R. 122). Plaintiff also testified that she is withdrawn and cries often. (R. 122-23).

### B.  Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing and categorized Plaintiff's past relevant work as a Court Clerk (DOT 243.362-010), sedentary work, with an SVP of 6, performed at a medium level. (R. 126). The ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and work experience with the limitations in Plaintiff's RFC could perform Plaintiff's past relevant work. *Id.* Specifically, the ALJ's hypothetical individual: (i) could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; (ii) occasionally balance, stoop, kneel, crouch, and crawl; (iii) must avoid concentrated exposure to extreme heat,

humidity, or hazards; and (iv) can concentrate and persist to complete simple and detailed tasks in two-hour segments over an eight-hour workday. *Id*. The VE testified that such an individual could perform Plaintiff's past relevant work as generally performed at sedentary level. *Id.*

Next, the ALJ asked the VE whether there were other jobs in the national economy that a hypothetical individual with Plaintiff's RFC could perform. *Id*. The VE testified that such an individual could work as a mail clerk (DOT 209.687-026), ticket marker (DOT 209.587-034), and cashier II (DOT 211.462-010), all light jobs with an SVP of 2, which exist in significant numbers in the national economy. (R. 126-27). In response to being questioned by the ALJ twice, the VE testified that her testimony was consistent with the DOT and its companion compilations. (R. 125, 127).

Thereafter, Plaintiff's counsel asked the VE whether the hypothetical individual could perform any other jobs in the national economy if she were further limited in the use of her hands, fingers, and arms. (R. 127). Specifically, counsel's hypothetical included a person who: (i) for 70% of the time could use her right extremities, i.e., hand (grasp, turn, twist), fingers (fine manipulation), arms (reaching in front of body), and arms (reaching overhead); but (ii) whose left extremities differed in useful time—i.e., hands (grasp/turn, twist) (60%), fingers (50%), arms (reaching in front of body) (40%), and arms (reaching overhead) (30%).[6] (R. 127-28). The VE testified that such an individual could not return to her past relevant work as a Court Clerk, which required frequent reaching, handling, and fingering. (R. 128). The VE further testified that these limitations would also preclude all other work in the national economy. (R. 128).

---

[6] Counsel's hypothetical incorporated the limitations in the opinion of Dr. Jose Prieto, Plaintiff's treating primary care doctor. (R. 1033).

Counsel questioned the VE further. Specifically, counsel asked whether the hypothetical individual could work if she would need to elevate her legs 45 degrees for 80% of a workday. *Id*. The VE testified that this additional limitation would preclude any work in the national economy. (R. 128-29). Further, when asked if the hypothetical individual were off task 20% of the time, the VE testified that this limitation would also preclude all work. (R. 129). Lastly, the VE testified that a hypothetical individual who took unscheduled breaks every 30 minutes lasting 20 minutes would also be precluded from any work in the national economy. *Id*.

## IV. THE ALJ'S DECISION

On October 17, 2018, after reviewing the evidence and conducting seven steps of the sequential analysis, the ALJ concluded that Plaintiff was not disabled under the Act.[7] (R. 53, 61).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. (R. 55).

At Step 2, the ALJ found that Plaintiff's current impairments since May 5, 2016 were breast cancer, obesity, depression, peripheral neuropathy, hypertension, diabetes mellitus, asthma, obstructive sleep apnea, and back pain. *Id*. However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. *Id*.

At Step 3, the ALJ concluded that medical improvement occurred on May 5, 2016. (R. 56). Specifically, by May 5, 2016, there had been a decrease in medical severity of the impairments present earlier at the favorable decision of February 28, 2012 (the "comparison point decision" or "CPD"). (R. 55, 56).

---

[7] Although the VE testified about Plaintiff's ability to do other work in the national economy, the ALJ did not proceed to Step 8 in her Decision.

At Step 4, the ALJ concluded that the medical improvement was related to the ability to work because by May 5, 2016, the claimant's impairments no longer met or medically equaled the Listing that was equaled at the time of the CPD (i.e., February 28, 2012). (R. 57).

Because the ALJ determined that the medical improvements related to claimant's ability to work, she proceeded to Step 6 of the analysis. At Step 6, the ALJ concluded that claimant has continued to have a severe or combination of impairments. Specifically, the ALJ found that claimant's obesity, breast cancer, and depression cause more than minimal limitation on claimant's ability to perform basic work activities. *Id*. However, claimant's other impairments (i.e., peripheral neuropathy, hypertension, diabetes, asthma, sleep apnea, and back pain) did not cause more than minimal restrictions and were, therefore, not severe. *Id*.

At Step 7, the ALJ determined that Plaintiff had the RFC to perform light work, except that she can only occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. *Id*. Claimant can also occasionally balance, stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to extreme heat, humidity, or hazards. *Id*. Lastly, the ALJ concluded that claimant can concentrate and persist to complete simple and detailed tasks in two-hour segments over an eight-hour workday. *Id*. Ultimately, at this step, based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform past relevant work as a Court Clerk. (R. 60).

## V.   **DISCUSSION**

Plaintiff raises several arguments challenging the ALJ's Decision. First, Plaintiff argues that the ALJ improperly discounted the medical opinions of her treating physicians, Dr. Jose Prieto (Plaintiff's primary care physician) and Dr. Diana Glaccum-Gavagni (Plaintiff's treating

psychiatrist).[8] *See generally* (ECF No. 18 at 4-16). Second, Plaintiff asserts that the ALJ erred in determining that she could perform her past relevant work as a Court Clerk because the ALJ failed to resolve an apparent conflict between the RFC/VE testimony and the DOT job description for a Court Clerk. *Id.* at 16-23. Third, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because it excluded exertional limitations opined to by Dr. Krishnamurthy, the State agency non-examining medical consultant.[9] *Id.* at 23-25. Fourth, Plaintiff asserts that the ALJ improperly discounted her subjective complaints of pain, fatigue, weakness, and numbness. *Id.* at 25-28. Lastly, Plaintiff argues that the ALJ erred in the evaluation of "paragraph A" and "paragraph C" of Listing 12.04 regarding mental impairments. *Id.* at 28-30.

For the reasons discussed below, the undersigned recommends that the ALJ's Decision be reversed and remanded to identify and resolve an apparent conflict between the RFC/VE testimony and the DOT job description for a Court Clerk. Because the undersigned finds this issue to be dispositive, it need not address Plaintiff's other allegations of error.[10]

---

[8] Dr. Prieto was Plaintiff's primary care physician between approximately 2013 and 2018. *See* (Exs. 16F, 20F, 23F, 33F, 36F). The record includes the doctor's treatment notes for numerous visits and a Physical Impairment Questionnaire completed on May 30, 2018. (Ex. 36F, R. 1032-34); *see also* (Ex. 16F, 20F, 23F, 33F). Dr. Diana Glaccum-Gavagni was Plaintiff's psychiatrist from approximately 2014 through 2018. *See* (Exs. 22F, 32F, 34F). The record includes Dr. Glaccum-Gavagni's treatment notes and a Mental Impairment Questionnaire completed on June 15, 2018. (Ex. 34F, R. 914-20) *see also* (Exs. 22F, 32F). The ALJ assigned "little weight" to the opinions of both Drs. Prieto and Glaccum-Gavagni. (R. 59, 60).

[9] On April 28, 2018, Dr. Krishnamurthy reviewed the medical record and opined that Plaintiff had shown medical improvement and no longer equaled Listing 13.10A. (R. 146). According to Dr. Krishnamurthy, although Plaintiff's allegation of "weakness" was "substantiated by the objective medical evidence," Plaintiff could perform a limited range of light work. (R. 143-46). More specifically, Plaintiff was "limited" in "reaching overhead with the left arm." (R. 144). The ALJ assigned "great weight" to that part of Dr. Krishnamurthy's opinion regarding exertional and postural/nonexertional limitations. (R. 59).

[10] Upon remand, the ALJ is encouraged to more clearly articulate her reasons for the weight assigned to Plaintiff's treating sources and Dr. Krishnamurthy, and address the effect, if any, of these opinions on Plaintiff's RFC.

**A. The ALJ Failed to Address an Apparent Conflict**

*1. Applicable Law*

In SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), the SSA made clear that an ALJ must resolve conflicts between the VE testimony and DOT data. In relevant part, SSR 00-4p provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

2000 WL 1898704, at *2.

In 2018, the Eleventh Circuit expanded on SSR 00-4p. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018). In *Washington,* the Court held that an ALJ has an affirmative duty under SSR 00-04p "to identify, explain, and resolve" apparent conflicts between DOT data and VE testimony. *Id*. at 1356. It noted that the ALJ's "duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Id*. at 1362. Rather, "if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion." *Id*. at 1366.

*2. The ALJ Failed to Address an Apparent VE/DOT Conflict*

Plaintiff argues that the ALJ erred in failing to identify and resolve an apparent conflict between the RFC/VE testimony and the DOT job description for a Court Clerk. (ECF No. 18 at

16-17). Here, the ALJ's RFC limited Plaintiff to "simple and detailed tasks." (R. 57). This limitation was also included in the hypothetical presented to the VE. (R. 126). Plaintiff argues that the RFC limited Plaintiff to "unskilled" work, which conflicts directly with the DOT for a Court Clerk. (ECF No. 18 at 16-17).

Pursuant to the DOT, a Court Clerk has a reasoning level of 4, which requires applying principles of rational systems[11] to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. 1991 WL 672263, at *1 (DOT 243.362-010 for Court Clerk); *see also* DOT, App'x C, 1991 WL 688702, at *5 (4th ed. rev'd 1991) (defining all reasoning levels). A Court Clerk must interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. 1991 WL 672263, at *1; *see also* 1991 WL 688702, at *5.

Plaintiff argues that the ALJ clearly restricted her to "light and unskilled work," which conflicts with the "skilled" job of a Court Clerk. (ECF No. 18 at 16-17). Plaintiff further argues that the ALJ's error is not harmless because the ALJ did not proceed to Step 8 of the analysis and did she determine whether Plaintiff could perform other jobs in the national economy. (ECF No. 18 at 20). Moreover, Plaintiff argues that even if the ALJ had accepted these jobs as alternative jobs at Step 8, the jobs conflict with Plaintiff's RFC. *Id.* In response, Defendant contends that the ALJ did not expressly limit Plaintiff to "unskilled" work in the RFC and that the RFC itself is not inconsistent with skilled work as a Court Clerk. (ECF No. 19 at 18-19). Based on a review of the record, the undersigned rejects Defendant's argument and finds that there is an apparent conflict that the ALJ failed to identify and resolve.

---

[11] Examples of rational systems are bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation. 1991 WL 672263, at *5.

13

Reasoning skill levels measure a claimant's ability to engage in certain basic functions related to education and require the claimant to be able to carry out instructions and perform mental tasks. 1991 WL 688702, at *3-5; *Nadile v. Saul*, No. 8:19-CV-9-T-CPT, 2020 WL 1430701, at *4 (M.D. Fla. Mar. 24, 2020). Reasoning levels range from 1 to 6, with one being the lowest. *Id*. As noted above, the reasoning level for a Court Clerk is 4, which generally requires solving practical problems and dealing with a variety of concrete variables and interpreting a variety of instructions. 1991 WL 672263, at *1. In contrast, a reasoning level of 1, which corresponds to unskilled work, requires applying commonsense understanding to carry out simple one- or two-step instructions and dealing with standardized situations with occasional or no variables in or from these situations encountered on the job. 1991 WL 688702, at * 5-6.[12]

Here, the ALJ's hypothetical to the VE was based on an RFC that limited Plaintiff to "concentrate and persist to complete *simple and detailed* tasks in two-hour segments over an eight-hour workday." (R. 126). The VE testified that such an individual could perform Plaintiff's past relevant work of a Court Clerk, as generally performed. *Id*. Although the ALJ twice questioned the VE on whether any potential conflict existed between her testimony and the DOT definition for a Court Clerk, *see* (R. 125, 127), the VE replied that she understood she needed to advise of a conflict, confirmed that no conflict existed, and that her testimony was consistent with the DOT.[13]

---

[12] For comparison, a reasoning level of 2 is similar to 1 and requires applying commonsense understanding to carry out detailed but uninvolved written or oral instructions and dealing with problems involving a few concrete variables. 1991 WL 688702, at *5. Similarly, a reasoning level of 3 requires applying commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and to deal with problems involving several concrete variables. 1991 WL 688702, at *5.

[13] Specifically, prior to the VE's testimony, the ALJ asked the VE: "And do you understand that if you give us an opinion which is in conflict with the information in the [DOT] that you need to advise of the conflict and of the basis for your opinion?" (R. 125). Then, at the conclusion of the VE's testimony, the ALJ again asked the VE: "And if your testimony consistent with the DOT?" (R. 127). The VE replied "yes" to both questions. (R. 125, 127).

(R. 125, 127). The ALJ's proforma inquiry fails to meet the requirement to identify, explain, and resolve an apparent conflict between the RFC/VE testimony and the DOT job description for a Court Clerk. Indeed, courts in this District have found that:

> Resolving [a] conflict goes beyond "taking the VE at his word that his testimony comports with the DOT." *Id.* Rather, if the VE's testimony conflicts with the DOT, an ALJ must "undertake a meaningful investigatory effort to uncover apparent conflicts." *Id.* at 1364. And failure to do so, "means the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence." *Id*. at 1356.

*Liao v. Berryhill*, No. 17-24629-CIV, 2019 WL 2254961, at *1 (S.D. Fla. Feb. 28, 2019) (reversing and remanding the case to the commissioner for failure to identify or resolve a conflict); *see also Daniel v. Comm'r of Soc. Sec.*, No. 5:19-CV-83-OC-MAP, 2020 WL 1485900, at *3 (M.D. Fla. Mar. 27, 2020) (noting that the ALJ had a duty to elicit a reasonable explanation for the apparent conflict between the VE and the DOT before relying on the VE's testimony).

Moreover, an "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Washington*, 906 F.3d at 1365. At a minimum, a conflict is apparent if a "reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*. Here, a reasonable comparison of the RFC/VE testimony and the DOT job description for a Court Clerk reveals an apparent conflict. For example, an individual with Plaintiff's RFC, who is limited to "simple and detailed tasks" may not be able to perform at a reasoning level of 4, which requires that the person "apply principles of rational systems to solve practical problems and deal with a variety of concrete variables" or "interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *See, e.g., Johnson v. Comm'r of Soc. Sec.*, 782 F. App'x 875, 878 (11th Cir. 2019) (reversing district court and concluding that there was at least an apparent

15

conflict between a job with a reasoning level of three and claimant's limited RFC to "simple, routine tasks"); *see also Peters v. Saul*, No. 8:18-CV-2466-T-CPT, 2020 WL 814004, at *2 (M.D. Fla. Feb. 19, 2020) (remanding case where jobs required reasoning level of three and claimant was limited to "simple, routine tasks"); *Congdon v. Saul,* No. 8:19-CV-274-T-SPF, 2020 WL 563538, at *5 (M.D. Fla. Feb. 5, 2020) (remanding case where "apparent conflict" between the ability to carry out simple instructions and a job with a reasoning level of three, which requires the ability to carry out instructions in "diagrammatic form," in which several concrete variables deviate from the standardized situation); *Porter v. Berryhill,* No. 18-CV-60210, 2020 WL 475690, at *8 (S.D. Fla. Jan. 13, 2020), *report and recommendation adopted,* No. 18-CV-60210, 2020 WL 473131 (S.D. Fla. Jan. 29, 2020) (remanding case for apparent conflict between a restriction to "simple instructions" and jobs that require "detail but uninvolved instructions").

Additionally, the job of Court Clerk includes job duties, skills, and aptitudes that seem to conflict with the ALJ's limited RFC for Plaintiff. Specifically, the job duties of a Court Clerk require: (i) examining legal documents submitted to court for adherence to law or court procedures; (ii) preparing case folders, and posts, files or routes documents; (iii) explaining procedures or forms to parties in the case; (iv) securing information for judges; (v) contacting witnesses, attorneys, and litigants to obtain information for court, and instructing the parties when to appear in court; (vi) notifying the district attorney's office of cases prosecuted by the district attorney; (vii) recording minutes of court proceedings and transcribing testimony; (viii) recording the case disposition, court orders, and arranging for payment of court fees; and (ix) collecting court fees or fines and recording the amount collected. 1991 WL 672263, at *1. The ALJ failed to address whether Plaintiff could perform the actual tasks of a Court Clerk despite being limited to "simple and detailed tasks."

Moreover, because the ALJ did not proceed to Step 8 of the sequential evaluation to consider whether Plaintiff could perform other jobs in the national economy, the failure to address the apparent conflict between the RFC/VE testimony and the DOT job description for a Court Clerk is reversible error.[14] *Cf. Estate of White v. Saul*, No. 19-CV-61745, 2020 WL 5351064, at *18 (S.D. Fla. Aug. 26, 2020), *report and recommendation adopted*, No. 19-61745-CIV, 2020 WL 5291966 (S.D. Fla. Sept. 4, 2020) (finding harmless error where claimant could perform other jobs in the national economy); *Jules v. Berryhill*, No. 18-CV-60963, 2019 WL 4737602, at *10 (S.D. Fla. Sept. 27, 2019) (same).

Accordingly, the case should be remanded to the ALJ for a "meaningful investigatory effort" into this apparent conflict.[15] *Washington*, 906 F.3d at 1364.

---

[14] Moreover, the ALJ's Decision is also internally inconsistent. Specifically, although throughout the Decision the ALJ characterizes Plaintiff's RFC as limited to "unskilled work," the ALJ at one point stated that "claimant's past work has [an SVP of] six, indicative of *skilled* work." *Compare* (R. 58, 59) *with* (R. 60). These inconsistencies highlight the need to reverse. *Cf. Estate of White*, 2020 WL 5351064, at *12 n.10 (concluding that reading the ALJ's decision in context showed that single erroneous sentence did not amount to reversible error).

[15] Moreover, although not reached by the ALJ in her Decision, the undersigned has also considered the VE's testimony that Plaintiff could alternatively work as a mail clerk (DOT 209.687-026), ticket marker (DOT 209.587-034), or cashier II (DOT 211.462-010). (R. 126-27). A mail clerk and a cashier II both have a reasoning level of three, which requires the individual to apply commonsense understanding to carry out instructions and deal with problems *involving several concrete variables*. 1991 WL 671813 (DOT 209.687-026 for Mail Clerk); 1991 WL 671840 (DOT 211.462-010 for Cashier II). The Eleventh Circuit has noted that "there is at least 'apparently' a conflict between an employee limited to 'simple, routine tasks' and one able to 'deal with problems involving several concrete variables.'" *Johnson v. Comm'r of Soc. Sec.*, 782 F. App'x 875, 878 (11th Cir. 2019). Thus, even if the ALJ had considered the alternative jobs of a mail clerk and cashier II, she would have had to inquire about and resolve any apparent conflict. The undersigned has also considered the alternative job of ticket marker, with a reasoning level of 2, requiring the individual to apply commonsense understanding to carry out *detailed but uninvolved written or oral instructions* and deal with problems involving a few concrete variables in or from standardized situations. 1991 WL 671802 (DOT 209.587-034 for Marker). The ALJ's failure to reach this last step creates uncertainty on whether substantial evidence supports the ALJ's conclusion. Thus, upon remand, the ALJ should identify, explain, and resolve any apparent conflict that may exist with these alternative jobs.

### B. The ALJ's Decision Is Internally Inconsistent

The ALJ's Decision, viewed as a whole, also supports the conclusion that there is an inconsistency between the ALJ's RFC/VE testimony and the DOT job description for a Court Clerk. As noted above, the Court Clerk job has a reasoning level of 4, which is consistent with skilled work. Nevertheless, throughout her Decision, the ALJ described Plaintiff's RFC as limited to "unskilled work" at least three times. For example, the ALJ first noted that "the objective medical evidence is consistent with a restriction to a range of light and *unskilled* work consistent with [the RFC]." (R. 58) (emphasis added). Further, with regard to Plaintiff's mental impairments, the ALJ again states that "claimant remains capable of performing the range of unskilled work outlined [in the Decision]." (R. 59) (emphasis added). Lastly, the ALJ noted that Plaintiff was "emotionally stable at times, a sign she can perform *unskilled* work." *Id*. (emphasis added). Against the ALJ's repeated characterization of Plaintiff's RFC as "unskilled," it is disingenuous for Defendant to argue that the ALJ's statements are mere "references" without significant effect on Plaintiff's RFC simply because the ALJ did not use the term "unskilled" in the RFC. *See* (ECF No. 19 at 18-19). The undersigned rejects Defendant's invitation to ignore the ALJ's unambiguous language. The ALJ's Decision, read as a whole, leaves no doubt that the ALJ considered Plaintiff to be limited to unskilled work.

In sum, it is not for the undersigned to make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. *Winschel,* 631 F.3d at 1178. Rather, the undersigned's review of the ALJ's Decision is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Here, the RFC/VE testimony and the DOT job description for a Court Clerk conflicted and the ALJ did not identify or resolve the conflict. Moreover, the ALJ's Decision is internally inconsistent.

Accordingly, the ALJ's Decision is not supported by substantial evidence and failed to apply the proper legal standards.

## VI.     RECOMMENDATION

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 18) be **GRANTED**, Defendant's Motion for Summary Judgment (ECF Nos. 19, 20) be **DENIED**, and the ALJ's Decision be **REVERSED AND REMANDED**.

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida on March 5, 2021.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
　　All Counsel of Record